AVILÉS, PLAINTIFF AND APPELLEE, *v.* SONS OF RAFAEL TORO, LTD., ET AL., DEFENDANTS AND APPELLANTS.

Appeal from the District Court of Mayagüez in an Action of Debt.

No. 1854.—Decided July 15, 1919.

ATTACHMENT—SECURITY—DAMAGES—CAUSE OF ACTION.—A sufficient cause of action exists in a suit for damages based on the obligations imposed by a bond given to obtain an attachment when the said bond is "to answer for the damages that may be occasioned the defendant in case it should be decided that there is no ground for judgment against the defendant," although the judgment was that "the plaintiff is considered as having abandoned the action, to his prejudice," for the bond was required by the court to answer for the damages that might result from the attachment and an instrument

executed in accordance with an order or decree of the court must be interpreted in conformity with the intention of the court which ordered its execution.

ID.—ID.—ID.—When a bond is given in accordance with the Act of March 1, 1902, to secure the effectiveness of judgments, section 4 of which provides that "the bond thus given shall secure the defendant against any damage caused to him by reason of the remedy," that obligation is a part of the bond although not expressly stated therein, for when a bond is given under a statute in force at the time, all that the bond may include which is not required by the statute must be considered as eliminated, and all that is omitted which should have been recited must be considered as included.

ID.—ID.—ID.—Inasmuch as in a bond given to obtain an attachment to secure the effectiveness of the judgment that may be entered in a suit the sureties bind themselves jointly with the principal, the obligation to respond for the damages falls not only upon the principal but also upon the sureties.

ID.—ID.—ID.—MISJOINDER.—There is no misjoinder of causes of action in a suit for damages caused by an attachment in another suit because the disbursements incurred by defendant in the latter suit are claimed as part of the damages, for that claim is not an action independent from that for damages, but forms a part of it.

ID.—ID.—ID.—BANKRUPTCY.—Although sction 67 of the Federal Bankruptcy Act provides that all attachments obtained against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, that provision does not abrogate the obligations imposed by a bond for an attachment to secure the effectiveness of a judgment when the obligor, who was the plaintiff in the action in which the attachment was levied, did not move that the action be considered as abandoned by him and that the attachment be dissolved, for he and the sureties are jointly liable for the consequences of the continuation of an attachment which in fact remained in effect notwithstanding the adjudication of bankruptcy, although he had lost his right.

ID.—DAMAGES.—According to section 1073 of the Civil Code, indemnity for losses and damages includes not only the amount of the loss which may have been suffered, "but also that of the profits which the creditor may have failed to realize."

ID.—ID.—APPEAL—JUDGMENT.—When the judgment determines the amount of damages in bulk without specifying the items of which it consists, in order to consider whether such amount is excessive the same must be attacked as a whole and not item by item.

ID.—ID.—DEPOSIT OF PROPERTY:—Section 10 of the act to secure the effectiveness of judgments prescribes that an attachment on personal property shall be effected by depositing the property with the court, or the person designated by it, under the responsibility of the plaintiff; therefore the plaintiff is liable for such damages as the depositary may occasion the defendant by the use of said property.

The facts are stated in the opinion.

*Messrs. Parra & Pérez Marchand* for the appellants.

*Mr. José Benet* for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

This action was brought by Emeterio C. Avilés against Sons of Rafael Toro, Ltd., Maximino Zapata and Gregorio Ramírez Vélez in the District Court of Mayagüez for the recovery of damages occasioned by a *lis pendens* attachment levied in an action of debt prosecuted in the Municipal Court of Cabo Rojo by this defendant partnership against plaintiff Avilés. On October 26, 1917, the District Court of Mayagüez sustained the complaint and adjudged that the three defendants pay jointly and severally to the plaintiff the sum of $1,000, together with the costs, disbursements and attorney fees. From that judgment the defendants appealed to this court.

The following facts were alleged by the plaintiff and admitted by the defendants in their answer:

On February 5, 1915, the defendant partnership filed a complaint in the Municipal Court of Cabo Rojo against the plaintiff for the recovery of the sum of $499.94 and also moved for and obtained from the said court an order for an attachment under bond.

The said bond was given by defendants Maximino Zapata and Gregorio Ramírez and was approved on its date by the Municipal Judge of Cabo Rojo and thereupon the marshal of the said court, at the designation of the plaintiffs, attached a cinematograph outfit belonging to defendant Avilés which was then being operated in the town of Lajas. Angel C. Sanabria was made custodian of the attached property and took possession of it on February 6, 1915.

On April 18, 1915, while the action brought by Sons of Rafael Toro, Ltd., against E. C. Avilés was pending in the Municipal Court of Cabo Rojo, the said partnership and two other creditors filed a verified petition in the United States District Court for Porto Rico asking that Avilés be adjudged a bankrupt, the said partnership alleging that they were cred-

itors of Avilés for the same sum sued for in their action in the Municipal Court of Cabo Rojo, and on May 7, 1915, the United States District Court for Porto Rico adjudged E. C. Avilés a bankrupt. Avilés, the bankrupt, offered his creditors a composition of twenty-five per cent cash of the amount of all the proved claims and his offer was approved by the Judge of the United States District Court for Porto Rico. Avilés paid according to the agreement all the proved claims, among them that of Sons of Rafael Toro, Ltd., and the said bankrupt was discharged, terminating the bankruptcy proceeding.

After having been discharged and on September 30, 1915, Avilés, filed a motion in the Municipal Court of Cabo Rojo for judgment in his favor, and, in turn, the mercantile partnership of Sons of Rafael Toro filed another motion for judgment by withdrawal, both of which motions were disposed of on October 15, 1915, in the following terms:

"On the motion of withdrawal filed by the plaintiffs herein on September 30, 1915, and also on the defendant's motion filed on October 2, 1915, the court sustains both motions and hereby enters judgment by withdrawal in this case, considering the plaintiffs as having abandoned the action to their prejudice; and likewise adjudges and orders the dissolution of the attachment levied by the marshal of this court and the marshal of the court of San Germán to secure the effectiveness of the judgment, and that the said marshals deliver to the defendant, E. C. Avilés, the chattels which were attached, according to the inventory made herein; and the clerk is ordered also to deliver to the said defendant the bond given by the plaintiffs for the purposes of section 192, the plaintiffs being charged with the costs and disbursements of this suit."

In compliance with that judgment the attached property was delivered by the custodian, Angel C. Sanabria, to Emeterio C. Avilés on October 27, 1915.

Both the plaintiff and the defendants agree as to these facts, and as to others on which they did not agree and which were brought out in the evidence at the trial, the court found

that "about the middle of the month of February, 1915, the custodian, Angel C. Sanabria, without the permission or authorization of the Municipal Court of Cabo Rojo and without the consent or authorization of the defendant, Emeterio C. Avilés, and under the instructions and with the authorization of the plaintiffs in that suit, Sons of Rafael Toro, Ltd., operated the said cinematograph and gave regular performances with it, going to the towns of San Germán and Sabana Grande for that purpose, charging the public for admission to the said shows and appropriating the receipts to himself; that the custodian, Angel C. Sanabria, used the attached property, received profits from it and appropriated to himself the said profits without rendering accounts to anyone; that thereafter when the property was returned to the defendant, Emeterio C. Avilés, by order of the municipal court, the attached property was in such a condition by reason of its use and consequent deterioration that it was unserviceable for the purpose for which it was designed;   *   *   * and that the plaintiff in this case has proved that he has been damaged by the use and abuse by the custodian of the attached property left in his custody, by the profits derived from the said property and by other damages which were satisfactorily proved, in the opinion of the court, in the sum of $1,000."

On the facts recited the court of Mayagüez entered judgment in the terms hereinbefore stated.

The appellants assign eleven errors in support of their appeal and we shall consider them in their numerical order as follows:

## I.

In overruling the demurrer for want of a cause of action.

The appellants base the said demurrer on the facts that plaintiff Emeterio C. Avilés brought an action for damages founded on the obligations imposed by the bond given to obtain the order for the attachment and that the bond given

should be limited in its effect to the lack of probable cause in the complaint and consequently in the attachment.

The bond reads as follows:

"WHEREAS, The plaintiffs, Son of Rafael Toro, Ltd., have instituted in this court (Municipal Court of Cabo Rojo) an action of debt for the sum of $499.94 against defendant E. C. Avilés, and have moved also for an attachment to secure the effectiveness of the judgment;

"WHEREAS, The court has required for ordering the attachment that a bond be given in the sum of one thousand dollars to answer for such damages as may be occasioned by the said attachment;

"THEREFORE, We, Gregorio Ramírez Vélez and Maximino Zapata, residents of the municipal judicial district of Cabo Rojo, freely and of our wills jointly and severally guarantee the obligation contracted in this bond by the plaintiffs in the said action to the amount of $1,000, to answer for the demages that may be occasioned the defendant, E. C. Avilés, in case it should be finally held that there is no ground for a judgment against the defendant. Signed: Gregorio Ramírez, surety.—Signed: Maximino Zapata, surety."

We have already transcribed the judgment of the Municipal Court of Cabo Rojo of October 15, 1915, in the case referred to in the bond, considering the plaintiffs as having abandoned the action to their prejudice and ordering the dissolution of the attachment levied to secure the effectiveness of the judgment. As may be seen, the judgment was not only not against the defendant for lack of a cause of action, but it was against the plaintiffs, Sons of Rafael Toro, Ltd., to their prejudice, and the costs and disbursement were imposed upon them.

But if there should be any doubt about the extent of the obligation of the bond, that doubt would be removed by considering the intention of the Municipal Court of Cabo Rojo, which required for ordering the attachment that a bond be given for the sum of $1,000 to answer for the damages that might result from the said attachment. The bond was given in compliance with the mandate of the court and an instrument executed in pursuance of an order or decree of a court

is to be construed according to the intention of the tribunal
which directed its execution.   9 C. J. 33:

Section 4 of the Act of March 1, 1902, to secure the effect-
iveness of judgments, reads as follows:

"Sec. 4.—If it be clearly shown by means of any authentic docu-
ment that the fulfillment of the obligation may be legally enforced,
the court shall decree the remedy without bond.

"In any other case, it shall be required that a bond be furnished.
The bond thus given shall secure the defendant against any damage
caused to him by reason of the remedy."

That statute expressly provides that the bond shall an-
swer for the damages that may be occasioned the defendant
as a result of the attachment, and that condition is a part
of the contract although it is not expressly included in the
bond, because the plaintiffs having relied on that statute in
moving for the attachment, they were not only bound by that
part of the law which favors them, but they also assumed
the responsibility which the statute creates against them.

"The law at the time of the execution of a bond is a part of it,
if it gives to the bond a certain legal effect it is as much a part of
the bond as if in terms incorporated therein.   Where a bond is given
under the authority of a statute in force when it is executed, in the ab-
sence of anything appearing to show a different intention it will be
presumed that the intention of the parties was to execute such a
bond as the law required, and such statute constitutes a part of the
bond as if incorporated in it, and the bond must be construed in
connection with the statute and the construction given to the statute
by the courts.   Such a bond must be given the effect which in reason
must have been intended by the statute.   Whatever is included in
the bond, and is not required by the law, must be read out of it,
and whatever is not expressed, and ought to have been incorporated,
must be read as if inserted into it."   9 C. J. 34.

And inasmuch as in a bond given to obtain an attachment
to secure the effectiveness of a judgment the sureties bind
themselves jointly with the principal (*Lowande* v. *Otero & Co.
et al.,* 14 P. R. R. 554, and *Muriente* v. *Terrasa et al.,* 22

P. R. R. 686), the obligation to respond for the damages sued for in the complaint falls not only on the principal, Sons of Rafael Toro & Co., Ltd., but also on the defendant sureties, Gregorio Ramírez and Maximino Zapata, wherefore the complaint states a real cause of action.

## II.

In overruling the demurrer for misjoinder of causes of action.

The said demurrer was interposed by the defendants on the ground that the action was brought against the three defendants for the damages alleged to have been sustained by the plaintiff as a result of the attachment and the plaintiff also sought to recover the disbursements of the suit, for which the defendant sureties, Zapata and Ramírez, were not liable.

The damages suffered by plaintiff Emeterio C. Avilés as a result of the attachment are itemized in the complaint as follows:

"For the depreciation, use, abuse and transportation
from one town to another of the plaintiff's property in relation to its actual value_____   $565. 00
"Profits not received from the said property during
8 months at the rate of $180 a month_____   1, 440. 00
"Fees of the attorney necessarily engaged by the defendant there (Municipal Court of Cabo Rojo) as
a result of the suit and the attachment_____    100. 00

Total_____ $2, 105. 00"

As may be seen, the claim for the attorney fees was not set up in an action separate from that for damages, but was included in the said action as a part of the damages suffered; therefore the demurrer for misjoinder of causes of action does not lie, but the item of attorney fees may or may not be allowed upon deciding the case on its merits or upon rendering final judgment.

## III.

In mistaking the scope of the surety contract sued on in this action.

This assignment was considered in discussing the first assignment and is untenable for the reasons then stated.

## IV.

In not giving due authority to the Federal Bankruptcy Act regarding attachments made within four months prior to the filing of the petition in bankruptcy.

It is true that on February 6, 1915, the attachment was levied on the plaintiff's property and on April 18, 1915, the petition in bankruptcy was filed in the United States District Court for Porto Rico, which on May 7 of the same year adjudged plaintiff Avilés a bankrupt, it being clear therefore that the date on which Avilés was adjudged a bankrupt is within the four months following the attachment of the property; but this fact does not justify the conclusion of the appellants that on April 18, 1915, the attachment levied by the Municipal Court of Cabo Rojo on the property of Avilés was automatically dissolved and from that moment Sons of Rafael Toro and their sureties were free from all liability as to anything that might thereafter befall the attached property.

Section 67 of the Federal Bankruptcy Act provides that "all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien ,shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, etc."

That statute has no influence upon the result of the

present suit, for the bankruptcy proceedings against Emeterio C. Avilés have nothing to do with the liability assumed by the defendant-appellants by virtue of the attachment of the property of Avilés in the action brought against him by Sons of Rafael Toro, Ltd., in the Municipal Court of Cabo Rojo.

Sons of Rafael Toro, Ltd., protected by the Federal Bankruptcy Act, could have moved the Municipal Court of Cabo Rojo to consider them as having withdrawn their action because they had transferred it to the Federal Court in the bankruptcy proceedings against Avilés, and that the attachment levied on his property be dissolved; but they did not do so until September 30, 1915, and they and the sureties are jointly liable for the consequent continuation of the attachment which in fact remained in effect notwithstanding the adjudication of bankruptcy, although it was void in law.

## V.

In holding that the bond for the attachment should secure the profits which the defendant might have received if he had had the free disposal of his property.

This question was disposed of in the case of *Muriente* v. *Terrasa et al.,* 22 P. R. R. 686. We then said, and now repeat, that section 1073 of the Civil Code provides that an indemnity for losses and damages includes not only the amount of the loss which may have been suffered, "but also that of the profits which may not have been realized."

## VI.

In holding that the bond for the attachment should secure the fees paid by the defendant in the suit to his attorney.

Among the items of damages which the plaintiff includes in his complaint and which make a total of $2,105, there is one of $100 for the fees of the attorney engaged by the defendant on account of the suit and the attachment, but it

does not appear in the findings of the trial court that the said item was taken into account in fixing in the judgment the amount of the damages at $1,000; but even had this been so, as the judge in determining the amount of the damages did not specify the items which constitute the amount, it was incumbent upon the appellants to show that the said amount was excessive if the attorney fees were included therein, which they did not do.

When the judgment determines the amount of the damages in a lump, without specifying the items of which it consists, in order to consider whether or not such amount is excessive it must be attacked as a whole and not by items, for this court has held repeatedly that an appeal is allowed from the judgment and not from the grounds thereof. *Filardi* v. *Barreda,* 24 P. R. R. 366.

## VII.

In not specifying in the judgment the damages considered as proved and the amount of each item.

This assignment of error supports the foregoing statement that it does not appear that in estimating the amount of the damages the court took into account the attorney fees. We find no statute which imposes upon the court such a duty as the appellants assign to it.

## VIII.

In finding that Sons of Rafael Toro gave instructions and authorization to the custodian to operate the cinematograph and giving weight to such supposed authorization without its approval by the court.

## IX.

In finding that plaintiff Avilés did not consent to the use which the custodian made of the attached property.

We have examined the evidence and find no such errors, and as regards assignment VIII it would not affect the result of the suit, for the custodian was acting under the respon-

sibility of the plaintiffs. Section 10 of the act to secure the effectiveness of judgments prescribes that an order prohibiting the alienation of personal property and an attachment on the same shall be executed by depositing the property with the court, or with the person designated by it, under the responsibility of the plaintiff. In this case the plaintiffs designated the custodian of the attached property.

## X.

In taking into account that Sons of Rafael Toro practically abandoned the case in the municipal court after the attachment and in not taking into account also that E. C. Avilés abandoned the defense of his rights in the said court from February to September 1915.

Avilés was protected by a bond and there was a custodian for whose acts the plaintiffs, Sons of Rafael Toro, were responsible. His rights were secured and he can not be burdened with the obligation of performing acts tending to avoid or diminish the liability of the said partnership and of its sureties.

## XI.

In taking into consideration the fact that Sons of Rafael Toro did not appeal from the judgment of the Municipal Court of Cabo Rojo holding that they had abandoned the suit to their prejudice.

In his opinion the judge states that Sons of Rafael Toro, Ltd., agreed to the judgment entered by the Municipal Court of Cabo Rojo on October 15, 1915, but from an examination of all the findings upon which the judgment appealed from was based it clearly appears that the consent of Sons of Rafael Toro to the judgment of the Municipal Court of Cabo Rojo had no decisive influence upon the mind of the judge when he rendered that judgment, which was correctly grounded upon the order of attachment, the bond given, the judgment of the Municipal Court of Cabo Rojo and the proof of the damages resulting from the attachment.

We have held repeatedly that an appeal is not taken from the grounds of a judgment, but from the judgment it-

self.   The judgment that the defendant shall pay jointly and severally to the plaintiff the sum of $1,000, together with the costs, disbursements and attorney fees, is supported by the evidence examined at the trial and conforms to the law applicable to the case.

The judgment appealed from is

*Affirmed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.